IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

REGINALD JACKSON #1018935 §

§ CIVIL ACTION NO. 9:06cv62

WARDEN WAKEFIELD, ET AL. §

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Reginald Jackson, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. § 1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding in accordance with 28 U.S.C. §636(c).

An evidentiary hearing was conducted on June 22, 2006, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, Jackson testified that in April of 2004, he was having trouble with his cellmate, an inmate named Barajas. Jackson stated that he wrote I-60 inmate request forms to Major Harris and Warden Wakefield advising them of the problem, but he received no response and nothing was done. On May 1, 2004, Barajas told Jackson that he wanted Jackson to leave the cell for a few hours so that he, Barajas, could work out. Jackson refused, saying that he wanted to sit and read his Bible. Barajas then assaulted him, and afterwards ordered him to clean up the blood. When Jackson refused, Barajas threatened to kill him, so Jackson complied. However, a guard had seen Jackson with blood on him, and he was taken to the infirmary and examined.

At the hearing, Jackson testified that at a life endangerment hearing after the assault, he asked Warden Wakefield why he had received no response to his I-60 request form, and Wakefield said that he did not recall having received one.

1

Jackson attached various exhibits to his complaint.  The first of these is a copy of an I-60 inmate request form which Jackson sent to Wakefield, dated April 22, 2004, saying that he was having problems with Barajas and asking that one of them be moved.  Jackson noted on the exhibit that he received no response.  The second exhibit is an identical I-60 which Jackson sent to Major Harris, dated April 25, 2004, on which Jackson also noted that no response was received.

The third exhibit is a copy of medical records, although it is not disputed that Jackson was assaulted by Barajas.  The fourth exhibit is an I-60 request form addressed to Mr. Tompson, the unit investigator for the Office of the Inspector General, dated May 3, 2004.  This I-60 concerns the assault of May 1, and the response was that the OIG would be off the unit until May 17, and the complaint would be looked into at that time.

The fifth exhibit supplied by Jackson is a copy of a letter to Warden Reescano, dated May 4, 2004, telling him of the incident and complaining that photographs of his injuries were not taken. The sixth exhibit is a letter to Gary Johnson, then the Director of TDCJ-CID, complaining of the incident and the fact that no photographs were taken.  The seventh exhibit is another letter to Johnson, and a form letter which Jackson received in response telling him of proper procedures in making complaints.

The eighth exhibit is a grievance which Jackson filed on May 13, 2004, complaining about the assault.  The response to this grievance was that the allegations were reviewed and an Offender Protection Investigation Form was done.  A hearing was held and Jackson signed a waiver saying that his life was not in danger at that time.  The ninth exhibit is Jackson's Step Two grievance, to which the response was that Jackson had signed a waiver saying that his life was no longer in danger and that he and Barajas were no longer assigned to the same housing area.

The tenth exhibit is a copy of a letter from Jackson to Cindy Garner, District Attorney for Houston County, seeking prosecution of Barajas.  The response to this letter, Exhibit 11, said that Garner had referred the complaint to the Special Prison Prosecution Unit.  Jackson wrote back to Garner on September 28, 2004, saying that he had not heard anything from her or the Special

Prosecution Unit.  The final exhibit which Jackson furnishes is a copy of a sick call request dated February 6, 2006, saying that his jaw pops and hurts when he chews, ever since May 2, 2004.

The Court has received and reviewed copies of certified, authenticated records furnished by prison officials.  Jackson's classification file includes copies of an Offender Protection Investigation Form, showing that an investigation was completed on May 6, 2004.  This investigation showed that Barajas was interviewed on May 1, and he claimed that Jackson had initiated the fight.  Barajas claimed that he had experienced trouble with black inmates in the past, but a check of his records found no evidence of any prior altercations.  Jackson was interviewed on May 5 and said that Barajas was trying to "run the cell" and tell Jackson when he could come in and go out, and Jackson said that he did not want any problems, so Barajas hit him three or four times. The investigation concluded that Barajas was the aggressor and he was charged with a disciplinary offense.

Another investigation was conducted of the allegations, concluding on May 14, 2004. This investigation noted the previous one and stated that Barajas' custody level was dropped to G-4 and he was moved away from Jackson.  Jackson signed a waiver indicating that he was no longer in danger.  The classification file contains no indication that an I-60 request form complaining of Barajas was ever received prior to the altercation taking place, and that as soon as prison officials learned of the problem, an investigation was launched and the situation was resolved by the transfer of Jackson's assailant.

Legal Standards and Analysis

Prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986).  A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

In Davidson, the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety.  There, an inmate named Davidson was threatened by another inmate, McMillian.  Davidson sent a note to the Assistant Superintendent of the prison, Cannon.  Cannon

passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48; *compare* Stokes v. Delcambre, 710 F.2d 1120, 1127 (5th Cir. 1983) (jailers made clear that they expected assault to occur and were unconcerned about it; held to be deliberate indifference).

In Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994), the Supreme Court specifically addressed the issue of deliberate indifference to an inmate's safety in prison. The Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-38, 114 S.Ct. at 1979; *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

In following these decisions, the Fifth Circuit has held that prison officials have a duty to protect inmates from violence at the hands of other prisoners; however, not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation. Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir. 1995). The plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of mind is one of "deliberate indifference" to the inmate's health or safety. Horton, 70 F.3d at 401, *citing* Farmer, 114 S.Ct. at 1977.

There is no concise definition of what types of prison conditions pose a "substantial risk of serious harm" under the Eighth Amendment. Instead, the Fifth Circuit said, this component of the

4

test must be examined conceptually, making sure to be responsive to "contemporary standards of decency."  The Court must consider "whether society considers the risk...to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  Horton, 70 F.3d at 401, *citing* Helling v. McKinney, 113 S.Ct. 2475 (1993).  Prison authorities must protect not only against current threats, but also must guard against "sufficiently imminent dangers" that are likely to cause harm "in the next week or month or year."  Horton, 70 F.3d at 401.

In Horton, the plaintiff arrived at the Clements Unit and was immediately approached by an inmate named Jackson, who threatened to assault him unless he paid extortion money.  Horton reported the threat the next morning to a desk officer, who said that he could not do anything and referred Horton to his correctional counselor.  Later that same day, Jackson approached Horton and made threatening gestures; Horton, believing that he had no choice, punched Jackson in self-defense. Both Horton and Jackson were placed in pre-hearing detention.

Horton filed a grievance the next day stating that Jackson was assaultive and had tried to extort money from him.  The warden refused Horton any relief and referred him to his correctional counselor.  Horton appealed, saying that he had already talked to his counselor, but the appeal was denied.

Horton and Jackson were sent to the same section of the prison when they were released from detention.  Horton continued to file grievances concerning Jackson's violent tendencies.  Several days later, Jackson approached Horton and punched him in the eye.  Horton and Jackson were again charged with fighting, and the disciplinary committee would not consider Horton's plea of self-defense.

The Fifth Circuit determined that based upon these facts, Horton had stated an arguably valid claim of failure to protect, because he had alleged both a sufficiently imminent danger and a substantial risk of serious harm.  This case is a different matter altogether.

In the present case, Jackson alleges that he wrote request forms to the warden and the major, but that he received no response whatsoever.  He says that Warden Wakefield told him that he had

not received any complaints from Jackson, and the classification file does not contain any such requests.  While the Court has no reason to and does not doubt Jackson's assertion that he submitted two I-60 request forms, this does not necessarily mean that the prison officials received these forms, nor does it negate the possibility that, as in <u>Davidson</u>, the forms were received but negligently not acted upon or were otherwise lost.   To prevail in his lawsuit, Jackson must show not merely negligence, but that the prison officials were deliberately indifferent to his safety.  Even taking all of his allegations as true, he has not met that standard.  *Cf.* <u>Domino v. TDCJ-ID</u>, 239 F.3d 752, 756 (5th Cir. 2001) (noting, in the context of medical care, that deliberate indifference is "an extremely high standard to meet.")

Jackson's case differs from <u>Horton</u> in that there, the prisoner's claims were repeatedly denied by prison personnel, including both his allegation that he was in danger and his claim of self-defense when the altercation occurred.   In this case, Jackson's claims were not denied; the records show that they were either never received, or at most that they may have been negligently disregarded.  Nothing in Jackson's pleadings or testimony or in the records before the Court supports even an inference of deliberate indifference to his safety.   The Fifth Circuit has held that complaints by prisoners for negligence on the part of prison officials, even where serious injury occurs, do not set out a valid claim under the Civil Rights Act even if such complaints could be valid under state law.  *See* <u>Bowie v. Procunier</u>, 808 F.2d 1142, 1143 (5th Cir. 1987).  The Court does not minimize the seriousness of the injuries which Jackson suffered as a result of being assaulted by his cellmate; however, to prevail in a civil rights lawsuit contending that he has been the victim of cruel and unusual punishment, Jackson must show that the Defendants have been deliberately indifferent - not merely negligent or careless - with regard to his safety.  With all of Jackson's allegations taken as true, the pleadings, testimony, and records in this case do not set out such a showing.  For this reason, his lawsuit may be dismissed.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees.  Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989).  A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Neitzke, 490 U.S. at 327, *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Jackson's claims lack any arguable basis in law and fail to state a claim upon which relief may be granted.  For this reason, his lawsuit may be dismissed.  *See generally* Thompson v. Patteson, 985 F.2d 202, 204 (5th Cir. 1993).   It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous.  28 U.S.C. §1915A(b).  It is further

ORDERED that any and all motions which may be pending in this cause are hereby DENIED.

So **ORDERED** and **SIGNED** this **20** day of  **July, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE